IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **Ruth Akers**, on behalf of herself and all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>**Maryland State Education Association**; **Teachers Association of Baltimore County**, as representative of the class of all chapters and affiliates of the Maryland State Education Association; **National Education Association**; **Baltimore County Public Schools**, as representative of the class of all school districts in Maryland; **Larry Hogan**, in his official capacity as governor of Maryland; **Brian Frosh**, in his official capacity as Attorney General of Maryland; **Elizabeth Molina Morgan**, **Robert I. Chanin**, **John A. Hayden III**, **Donald W. Harmon**, and **Ronald S. Boozer**, each in their official capacities as members of the Maryland Public School Labor Relations Board,<br><br>   Defendants. | Case No. _____<br><br><br><br><br><br>**Plaintiff's Class-Action Complaint** |

  Ruth Akers is a public-school teacher who brings this class action on behalf of herself and all others similarly situated, seeking redress for the defendants' past and ongoing violations of her constitutionally protected rights. The defendants have violated the class members' constitutional rights by forcing non-union members to pay compulsory "representation fees" to the Maryland State Education Association (MSEA) or its affiliates as a condition of their employment. The defendants have also

violated the constitutional rights of every public-school employee by threatening to disclose their private, personal contact information to the MSEA and its affiliates without the employee's consent.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

3. Because Ms. Akers resides in Carroll County, assignment to the Northern Division is appropriate. *See* Local Rule 501(4)(b)(iii).

## PARTIES

4. Plaintiff Ruth Akers resides in Carroll County, Maryland.

5. Defendant Maryland State Education Association (MSEA) is a labor union whose headquarters are located at 140 Main Street, Annapolis, Maryland 21401.

6. Defendant Teachers Association of Baltimore County is a local union chapter affiliated with the MSEA. Its offices are located at 305 East Joppa Road, Towson, Maryland 21286. It is sued as representative of the class of all chapters and affiliates of the MSEA.

7. Defendant National Education Association (NEA) is a labor union whose headquarters are located at 1201 16th Street NW, Washington, D.C. The NEA is affiliated with the MSEA.

8. Defendant Baltimore County Public Schools is a school district in Baltimore County, Maryland. Its offices are located at 6901 Charles Street, Towson, Maryland 21204. It is sued as representative of the class of all public-school districts in Maryland.

9. Defendant Larry Hogan is the governor of Maryland. His office is located at 100 State Circle, Annapolis, Maryland 21401-1925. Governor Hogan is the representative of the State and he is sued in his official capacity.

10. Defendant Brian Frosh is the Attorney General of Maryland. His office is located at 200 St. Paul Place, Baltimore, Maryland 21202. He is charged with enforcing the state's laws, including Md. Code Educ. § 407(c)–(f) and HB 811, which Ms. Akers is challenging as unconstitutional, and he is sued in his official capacity.

11. Defendants Elizabeth Molina Morgan, Robert I. Chanin, John A. Hayden III, Donald W. Harmon, and Ronald S. Boozer are members of the Maryland Public School Labor Relations Board. Their offices are located at 45 Calvert Street, Room 102, Annapolis, Maryland 21401. They are charged with enforcing the State's collective-bargaining laws, including Md. Code Educ. § 407(c)–(f) and HB 811, and they are sued in their official capacities.

## CLAIM #1—UNCONSTITUTIONAL AGENCY SHOP

12. Ms. Akers is a public-school teacher who works for the Baltimore County Public Schools.

13. Ms. Akers refuses to join the MSEA or its affiliates because she disapproves of their political advocacy and collective-bargaining activities, as well as the excessive salaries paid to even low-ranking MSEA officials.

14. Even though Ms. Akers is not a member of the MSEA or its affiliates, she is compelled to pay "representation fees" to the MSEA as a condition of her employment. *See* Md. Code Educ. § 6-407(c) (attached as Exhibit 1); Master Agreement Between the Board of Education of Baltimore County and the Teachers Association of Baltimore County § 3.20 & Appendix F (July 1, 2014 – June 30, 2019) (attached as Exhibit 3, at pages 10 and pages 63–65).

15. Ms. Akers does not want to pay these "representation fees" because she disapproves of the MSEA's activities and does not wish to subsidize them in any way. The compelled subsidy that Ms. Akers and her fellow representation-fee payers must remit to the MSEA as a condition of their employment violates their constitutional rights.

16. The law of Maryland authorizes the MSEA to extract money from non-union members as a condition of their employment. *See* Md. Code Educ. §§ 6-407(c)–(f) (attached as Exhibit 1). Sections 6-407(c)–(f) are unconstitutional because they allow public-employee unions to compel "representation fees" from nonmembers and without first securing the employee's affirmative, written, and freely given consent.

17. Section 6-407(c)(4) also requires public-school employees "whose religious beliefs are opposed to joining or financially supporting any collective bargaining organization" to pay their "representation fees" to a non-religious, union-approved charity rather than to the MSEA itself. This subsection is unconstitutional for multiple reasons. First, employees have a constitutional right to refrain from joining or providing financial support to a public-employee union, and they cannot be subject to any financial penalty for exercising this constitutional prerogative. Second, section 6-407(c)(4) violates the Free Exercise Clause by limiting its protections to those whose religious beliefs forbid them to join or support *any* labor union, while withholding its protections from those who have no religious objections to labor unions *per se* but who object on religious grounds to the specific ideological advocacy of the MESA. Third, section 6-407(c)(4) violates the Free Exercise Clause by categorically disqualifying religious charities as a permissible recipient of these compelled payments. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017).

18. Section 6-407(c)(7) requires school employers to deduct "representation fees" from the paychecks of non-union members and remit that money directly to the

MSEA or its affiliates. Section 6-407(c)(7) is unconstitutional because it compels public-school employers to take "representation fees" from a non-union member's paycheck and remit them to a public-employee union without first securing the employee's affirmative, written, and freely given consent.

19. The MSEA, along with the Baltimore County Public Schools and every other school district in the state, is acting under color of state law by imposing and collecting these "representation fees" from Ms. Akers and her fellow class members. *See* Md. Code Educ. §§ 6-407(c)–(f).

20. The MSEA and its affiliates, along with the Baltimore County Public Schools and every other school district in the state, have committed the torts of conversion, trover, detinue, and trespass to chattels by confiscating money that rightfully belongs to public-school employees. The unions and the school districts cannot defend their tortious conduct by relying on Md. Code Educ. § 6-407(c)–(f), because these statutory provisions are unconstitutional and unconstitutional statutes cannot confer immunity on tortious behavior.

21. The collective-bargaining agreement between the Board of Education of Baltimore County and the Teachers Association of Baltimore County requires the union to indemnify and hold the school district harmless for any claims that arise out of the imposition of these "agency fees" or "representation fees." *See* Exhibit 3, Appendix F, at page 65.

### CLAIM #2—UNCONSTITUTIONAL COMPELLED DISCLOSURE OF PERSONAL INFORMATION

22. Maryland recently enacted House Bill 811 (HB 811) in an attempt to dissuade union objectors such as Ms. Akers from withholding their support for the MSEA. *See* Exhibit 2 (reprinting the text of HB 811). Several provisions of this newly enacted statute violate the constitutional rights of Ms. Akers and her fellow union objectors.

23. HB 811 creates new statutory sections to be codified at Md. Code Educ. § 6-407.2, and Md. Code Educ. § 6-509.2. These new statutory provisions compel public-school employers to provide the MSEA and its affiliates with the name, home address, home telephone numbers, and personal cell-phone numbers of each newly hired school employee—regardless of whether the employee consents to this disclosure of his or her personal, private contact information. *See* Exhibit 2, at pages 5–6. Sections 6-407.2 and 509.2 also authorizes the MSEA and its affiliates to collectively bargain for the compelled disclosure of school employees' personal contact information. *See id.*

24. HB 811 also amends Md. Code, General Provisions § 4-311 to allow the MSEA and its affiliates to access an employee's home address, home telephone number, and personal cell-phone number from the employee's personnel file—regardless of whether the employee consents to this disclosure of his or her personal, private contact information.

25. These new statutory provisions are scheduled to take effect on July 1, 2018.

26. HB 811 does not give public-school employees any right to prevent this forcible disclosure of their personal contact information, and the statute imposes no restrictions on what the unions may do with the personal contact information that they obtain.

27. These provisions of HB 811 unconstitutionally chill the exercise of First Amendment freedoms by allowing public-employee unions to acquire the personal information of every employee who exercises his constitutional right not to join or financially support the union, or who exercises his First Amendment right to publicly criticize or oppose the union's activities. Labor unions have a long history of bullying and intimidating anti-union employees, and the courts do not and cannot tolerate compelled-disclosure laws that chill the exercise of First Amendment freedoms. *See NAACP v. Alabama*, 357 U.S. 449 (1958).

## CLASS ALLEGATIONS—AGENCY-SHOP CLAIM

28. Ms. Akers brings this class action under Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B), and (b)(3). The class includes all individuals who: (1) are or were employed by the State of Maryland or any of its subunits, including any school district in the State; and (2) are or were non-union members who were compelled by the MSEA or its affiliates to pay "agency fees" or "representation fees" as a condition of their employment—regardless of whether those fees were remitted to the union, its affiliates, or a third-party organization. The class includes everyone who has ever fallen within this definition, including current, former, or retired teachers or teachers who have moved to other States, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

29. The number of persons in the class makes joinder of the individual class members impractical.

30. There are questions of fact and law common to all class members. Factually, all class members are public employees and non-union members who have been forced to pay "representation fees" to the MSEA or its affiliates as a condition of their employment. Legally, the U.S. Constitution and Maryland tort law afford the same rights to every member of the class.

31. Ms. Akers's claims are typical of other class members, as each class member has objected to union membership yet was subject to "representation fees" despite their refusal to join the MSEA or its affiliates.

32. Ms. Akers adequately represents the interests of her fellow class members, and she has no interests antagonistic to the class.

33. A class action can be maintained under Rule 23(b)(1)(A) because separate actions by class members could risk inconsistent adjudications on the underlying legal issues.

34. A class action can be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of compulsory "representation fees" will, as a practical matter, be dispositive of the interests of all class members.

35. A class action can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because all class members are subjected to the same violation of their constitutional rights, and the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions.

**CLASS ALLEGATIONS—COMPELLED-DISCLOSURE CLAIM**

36. Ms. Akers seeks to represent a larger and distinct class of plaintiffs for her compelled-disclosure claim. She brings this class claim under Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B), and (b)(3). The compelled-disclosure class includes all individuals who: (1) are or will be employed by the State of Maryland or any of its subunits, including any school district in the State; and (2) are or will be subject to having their personal contact information turned over the MSEA, its chapters or affiliates, or any public-employee union without the employee's consent. The class includes anyone who comes within the class definition at any time before the conclusion of this action.

37. The number of persons in the class makes joinder of the individual class members impractical.

38. There are questions of fact and law common to all class members. Factually, all class members are public employees whose personal contact information is at risk of disclosure. Legally, the U.S. Constitution affords the same rights to every member of the class.

39. Ms. Akers's claims are typical of other class members, as each class member is exposed to the compelled disclosure of their personal, private contact information.

40. Ms. Akers adequately represents the interests of her fellow class members, and she has no interests antagonistic to the class.

41. A class action can be maintained under Rule 23(b)(1)(A) because separate actions by class members could risk inconsistent adjudications on the underlying legal issues.

42. A class action can be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of these compelled disclosures will, as a practical matter, be dispositive of the interests of all class members.

43. A class action can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because all class members are subjected to the same violation of their constitutional rights and it would be burdensome for each class member to maintain separate actions.

## CAUSES OF ACTION

44. Ms. Akers is suing the MSEA and its local affiliates, the NEA, the school districts, Governor Hogan, Attorney General Frosh, and the members of the Maryland Public School Labor Relations Board under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, each of which supplies a cause of action for the individual and class-wide relief that she is requesting.

45. Ms. Akers is also suing the MSEA and its local affiliates under the state-law torts of conversion, trover, detinue, trespass to chattels, and any other state-law cause of action that offers relief for this unlawful seizure of her personal property. Mr. Akers

invokes the supplemental jurisdiction of this court over these pendent state-law claims. *See* 28 U.S.C. § 1367.

## DEMAND FOR RELIEF

46. Ms. Akers respectfully requests that the court:

    a. certify a class of all nonunion members who have been forced to pay "representation fees" to the MSEA, its affiliates, or a third-party organization as a condition of their employment;

    b. certify a separate class of all public-school employees whose personal contact information is at risk of disclosure by the provisions of HB 811;

    c. declare that Ms. Akers and her fellow class members have a constitutional right to decline to join or financially support a public-employee union, and that they cannot be forced to pay money to a public-employee union (or a union-approved third-party organization) as a condition of their employment;

    d. declare that state tort law protects the right of Ms. Akers and her fellow class members not to have their wages garnished or redirected by the MSEA without their affirmative, written, and freely given consent, and that any federal or state law or collective-bargaining agreement that purports to override these protections of state tort law by allowing the MSEA to help itself to the wages and paychecks of school employees—or that compels school employees to consent the garnishment of their wages by the MSEA as a condition of their employment—is unconstitutional and without legal effect;

e. declare Md. Code Educ. § 6-407(c)–(f) and each of their subsections unconstitutional because they allow public-employee unions to extract "representation fees" from nonmembers as a condition of their employment, and permanently enjoin Governor Hogan, Attorney General Frosh, the members of the Maryland Public School Labor Relations Board, the school districts, and all of their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing Md. Code Educ. § 6-407(c)–(f), or any other provision of state law that authorizes or enforces public-employee union shops;

f. declare Md. Code Educ. § 6-407(c)(4) unconstitutional because it imposes a financial penalty on employees who exercise their constitutional right to refuse to join or financially support a public-employee union;

g. declare that Md. Code Educ. § 6-407(c)(4) violates the Free Exercise Clause by limiting its protections to those whose religious beliefs forbid them to join or support *any* labor union, while withholding its protections from those who have no religious objections to labor unions *per se* but who object on religious grounds to the specific ideological advocacy of the MESA;

h. declare that Md. Code Educ. § 6-407(c)(4) violates the Free Exercise Clause, as interpreted in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017), by categorically disqualifying religious charities from receiving the compelled payments described in that subsection;

i. declare Md. Code Educ. § 6-407(c)(7) unconstitutional, and permanently enjoin the Baltimore County Public Schools, along with every

school district in the state of Maryland, from deducting "representation fees" from the paychecks of non-union members and remitting them to public-employee unions;

j. declare that section 3.20 and Appendix F of the collective bargaining agreement between the Board of Education of Baltimore County and the Teachers Association of Baltimore County violates the constitutional rights of Ms. Akers and her fellow class members, and declare that all collective-bargaining agreements that compel non-union members to pay "representation fees" to the MSEA or its affiliates as a condition of their employment are invalid and without effect;

k. permanently enjoin the Board of Education of Baltimore County and the Teachers Association of Baltimore County from enforcing section 3.20 and Appendix F of their collective bargaining agreement, and permanently enjoin every school district and every MSEA affiliate in the State from enforcing similar provisions in collective bargaining agreements that require non-union members to pay "agency fees" or "representation fees" to a public-employee union;

l. order the MSEA and its affiliates, including the NEA, to repay all "agency fees" or "representation fees" or other money that they unconstitutionally took from Ms. Akers and her fellow class members;

m. permanently enjoin the MSEA and its affiliates, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with it, from taking or redirecting any type of money from Ms. Akers and her fellow class members or any other public employee as a condition of their employment and without first obtaining the employee's affirmative, written, and freely given consent;

n. permanently enjoin the Baltimore County Public Schools, along with every school district in the State, from entering into any collective-bargaining agreement that allows a public-employee union to collect or redirect any type of money from a non-union member;

o. declare unconstitutional the provisions of HB 811 that require public employers to turn over their employees' personal contact information to a union without the employee's consent, and permanently enjoin Governor Hogan, Attorney General Frosh, the members of the Maryland Public School Labor Relations Board, the school districts, and all of their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing those provisions of HB 811, Md. Code Educ. § 6-407.2, Md. Code Educ. § 6-509.2, or Md. Code, General Provisions § 4-311(b)(3);

p. permanently enjoin the Baltimore County Public Schools, along with every school district in the State, from disclosing the personal contact information of its employees to the MSEA or any other public-employee union without first securing the employee's affirmative, written, and freely given consent;

q. permanently enjoin the MSEA and its affiliates and chapters, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from seeking or obtaining the personal contact information of any employee who has chosen not to join or financially support the union, or any other employee who has have declined to give his employer permission to disclose his personal contact information to the MSEA;

r. order the MSEA, its affiliates and chapters, the Baltimore County Public Schools, and every school district in the State to immediately honor and enforce a public employee's decision to withdraw his membership or financial support of a public-employee union, regardless of the time of year that the decision is made;

s. award costs and attorneys' fees under 42 U.S.C. § 1988;

t. grant all other relief that the Court may deem just, proper, or equitable.

Respectfully submitted.

/s/ Rada A. Machin

| | |
|---|---|
| Jonathan F. Mitchell* | Rada A. Machin |
| Mitchell Law PLLC | D. Md. Bar No. 20076 |
| 106 East Sixth Street, Suite 900 | The Machin Law Firm, LLC |
| Austin, Texas 78701 | One Research Court, Suite 450 |
| (512) 686-3940 | Rockville, Maryland 20850 |
| jonathan@mitchell.law | (301) 731-2000 (phone) |
| | (301) 731-2000 (fax) |
| * *pro hac vice* application forthcoming | rada@machinlawfirm.com |
| | *Counsel for Plaintiffs and the Proposed Class* |
| Dated: June 18, 2018 | |