IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **Ruth Akers** and **Sharon Moesel,** on behalf of themselves and others similarly situated; **Sharon Moesel**, on behalf of herself and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **Maryland State Education Association**, et al., <br><br> Defendants. | Case No. 1:18-cv-01797-RDB |

## RESPONSE TO THE STATE DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

JONATHAN F. MITCHELL*
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law



* admitted *pro hac vice*

RADA A. MACHIN
D. Md. Bar No. 20076
The Machin Law Firm, LLC
One Research Court, Suite 450
Rockville, Maryland 20850
(301) 731-2000 (phone)
(301) 731-2000 (fax)
rada@machinlawfirm.com

*Counsel for Plaintiffs and
the Proposed Class*

# TABLE OF CONTENTS

Table of contents.................................................................................... i

Table of authorities............................................................................... ii

I. The plaintiffs' constitutional challenge to section 6-407(c)–(f) of the Maryland Code Of Education is not moot because it remains possible for this Court to declare section 3546 unconstitutional and enjoin the state defendants from enforcing it ............................................................. 2

II. The plaintiffs' claims for prospective relief against the collection of representation fees are not moot because a defendant's voluntary cessation of unconstitutional conduct in response to a Supreme Court ruling does not moot a claim for prospective relief....................................... 4

    A. Same-sex marriage ................................................................ 5

    B. Partial-birth abortion ............................................................ 6

    C. Sex-offender access to social-networking web sites ................................. 7

    D. None of the cases that the state defendants cite supports their mootness argument ............................................................. 10

III. The plaintiffs have stated a claim against the enforcement of House Bill 811................................................................................... 12

    A. HB 811's compelled-disclosure requirements are subject to "exacting scrutiny" ............................................................. 13

    B. The compelled disclosure of anti-union employees' home addresses, home phone numbers, and personal cell-phone numbers cannot survive "exacting scrutiny" because it remains possible to establish equally effective channels of communication without forcing schools to disclose this personal contact information ............................ 14

    C. The State's complaint that the plaintiffs have failed to produce "evidence" or specific factual allegations is not a basis for dismissal under Rule 12(b)(6)........................................................... 16

    D. The pre-*Janus* authorities that uphold the compelled disclosure of employees' personal contact information have no bearing on the plaintiffs' First Amendment arguments against HB 811........................ 18

IV. The plaintiffs' constitutional challenges to exclusive representation should be dismissed given the Supreme Court's holding in *Knight* ............ 19

Conclusion ........................................................................................ 21

Certificate of service ......................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Bierman v. Dayton*, 900 F.3d 570 (8th Cir. 2018)................................................. 20

*Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*,
   402 U.S. 313 (1971)................................................................... 3

*Bloodgood v. Garraghty*, 783 F.2d 470 (4th Cir. 1986)........................................ 10

*Brown & Pipkins, LLC v. Serv. Employees Int'l Union*,
   846 F.3d 716 (4th Cir. 2017) .......................................................... 1

*Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87 (1982) ................ 13

*Campaign for Southern Equality v. Bryant*,
   791 F.3d 625 (5th Cir. 2015)............................................................ 6

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) ......................................... 1

*Christian Coalition v. Cole*, 355 F.3d 1288 (11th Cir. 2004) ........................... 11

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)........................... 1

*County of Los Angeles v. Los Angeles County Employee Relations
   Comm'n.*, 301 P.3d 1102 (Cal. 2013) ................................................ 15

*De Leon v. Abbott*, 791 F.3d 619 (5th Cir. 2015)................................................. 6

*Doe v. Kentucky ex rel. Tilley*, 283 F. Supp. 3d 608 (E.D. Ky. 2017)................. 7, 8

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)................................................................... 5

*Global Relief Foundation, Inc. v. O'Neill*,
   315 F.3d 748 (7th Cir. 2002) .......................................................... 1

*Hope Clinic v. Ryan*, 249 F.3d 603 (7th Cir. 2001).......................................... 6, 8

*Janus v. American Federation of State, County, and Municipal
   Employees, Council 31*, 138 S. Ct. 2448 (2018) ............................. 2, 19

*Knight v. Minnesota Community College Faculty Association*,
   460 U.S. 1048 (1983)................................................................. 19

*Martin v. Wilks*, 490 U.S. 755 (1989) ................................................................. 3

*McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004) ................................................. 2

*Minnesota State Board for Community Colleges v. Knight*,
   465 U.S. 271 (1984)................................................................... 19

*NAACP v. Alabama*, 357 U.S. 449 (1958) ......................................................... 13

*NLRB v. J.P. Stevens & Co.*, 409 F.2d 1207 (4th Cir. 1969) .............................. 18

*NLRB v. Wyman-Gordon Co.*, 394 U.S. 759 (1969) ........................................... 18

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) ...................................... 7

*Porter v. Clarke*, 852 F.3d 358 (4th Cir. 2017).......................................... 1, 4, 8

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) ........................... 11

*Robicheaux v. Caldwell*, 2015 WL 4090353  (E.D. La. July 2, 2015).................... 6

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
   490 U.S. 477 (1989)................................................................... 20

*Rosenbrahn v. Daugaard*, 799 F.3d 918 (8th Cir. 2015) .........................................5

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ....................................6

*Stenberg v. Carhart*, 530 U.S. 914 (2000) ...........................................................6

*Strawser v. Strange*, 190 F. Supp. 3d 1078 (S.D. Ala. 2016) .................................5

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) .........................................17, 18

*Telco Communications, Inc. v. Carbaugh*,
   885 F.2d 1225 (4th Cir. 1989) ......................................................................10

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) ...........................................................14

*U.S. Dep't of the Treasury, Bureau of Alcohol, Tobacco and Firearms v.*
   *Galioto*, 477 U.S. 556 (1986) ..........................................................................2

*United States v. Figueroa-Ocampo*, 494 F.3d 1211 (9th Cir. 2007) .......................1

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ...........................................1

*Valero Terrestrial Corp. v. Paige*, 211 F.3d 112 (4th Cir. 2000) ............................2

*Waters v. Churchill*, 511 U.S. 661 (1994) ...........................................................19

*Waters v. Ricketts*, 159 F. Supp. 3d 992 (D. Neb. 2016) .......................................5

*Waters v. Ricketts*, 798 F.3d 682 (8th Cir. 2015) .................................................5

*Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485 (7th Cir. 2004) .................10

## Statutes

Cal. Gov't Code § 6207 ....................................................................................16

Cal. Gov't Code § 6254.3 (a)(3) .......................................................................16

Cal. Gov't Code § 6254.3(c) .............................................................................16

Md. Code of Educ. § 6-407 .........................................................................passim

Md. House Bill 811 .....................................................................................passim

## Other Authorities

Edward A. Hartnett, *A Matter of Judgment, Not A Matter of Opinion*,
   74 N.Y.U. L. Rev. 123 (1999) ..........................................................................3

Thomas W. Merrill, *Judicial Opinions as Binding Law and as*
   *Explanations for Judgments*, 15 Cardozo L. Rev. 43 (1993) ...............................3

## Constitutional Provisions

U.S. Const. art. III, § 2, ¶ 2 .............................................................................9

The plaintiffs' constitutional challenge to Maryland's agency-shop laws is not moot because it remains possible for this Court to enter the declaratory and injunctive relief that the plaintiffs request. Maryland has not repealed or amended its agency-shop laws in response to *Janus*, so it is still possible for this Court to declare those statutes unconstitutional and enjoin the state defendants from enforcing them. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) ("A case becomes moot . . . only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (citation and internal quotation marks omitted)); *Brown & Pipkins, LLC v. Serv. Employees Int'l Union*, 846 F.3d 716, 728 (4th Cir. 2017) (same); *Global Relief Foundation, Inc. v. O'Neill*, 315 F.3d 748, 751 (7th Cir. 2002) ("When relief is possible, a lawsuit is not moot."); *United States v. Figueroa-Ocampo*, 494 F.3d 1211, 1217 (9th Cir. 2007) ("[T]he possibility of relief is sufficient to prevent mootness.").

Even if this Court were to conclude that judicial relief is no longer possible because the state defendants have promised to stop enforcing the unconstitutional statutes, that *still* would not moot the plaintiffs' claims because a defendant's "voluntary cessation" of unlawful conduct does not moot a claim for declaratory or injunctive relief. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot."); *Porter v. Clarke*, 852 F.3d 358 (4th Cir. 2017) (same). The state defendants were enforcing an unconstitutional statute and violating the plaintiffs' constitutional rights when the plaintiffs sued, and they stopped while the litigation was ongoing. That is the very definition of "voluntary cessation"—and it does not moot the plaintiffs' claims for prospective relief.

The state defendants do not deny that they "ceased" enforcing the challenged statutes during the litigation—and they do not deny that their cessation was "voluntary." Matters would be different if the defendants had been *compelled* to stop enforcing the statutes by a new legislative enactment that repealed or amended the disputed statutory provisions, or by a court ruling that enjoined the defendants themselves from enforcing the disputed laws. *See U.S. Dep't of the Treasury, Bureau of Alcohol, Tobacco and Firearms v. Galioto*, 477 U.S. 556 (1986) (holding that a case becomes moot if Congress amends the statute to remove the challenged provision); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000) ("[S]tatutory changes that discontinue a challenged practice are usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." (citation and internal quotation marks omitted)); *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed."). But the defendants were under no legal compulsion to cease enforcing their statutes in the wake of *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), and they cannot show that their response to *Janus* was non-voluntary.

## I. THE PLAINTIFFS' CONSTITUTIONAL CHALLENGE TO SECTION 6-407(c)–(f) OF THE MARYLAND CODE OF EDUCATION IS NOT MOOT BECAUSE IT REMAINS POSSIBLE FOR THIS COURT TO DECLARE SECTION 3546 UNCONSTITUTIONAL AND ENJOIN THE STATE DEFENDANTS FROM ENFORCING IT

The ruling in *Janus* did not impose any legal obligations on the state or union defendants in this case. None of them were parties to the *Janus* litigation, and they have no formal legal obligation to obey a court judgment that was entered in a case that they were not involved in. Judicial rulings bind only the named parties to the

litigation,[1] and Supreme Court opinions do not create self-executing legal obligations unless and until a court enters a judgment that enforces the Supreme Court's interpretation of the Constitution. *See, e.g.*, Edward A. Hartnett, *A Matter of Judgment, Not A Matter of Opinion*, 74 N.Y.U. L. Rev. 123, 126–27 (1999) ("The operative legal act performed by a court is the entry of a judgment; an opinion is simply an explanation of reasons for that judgment."); Thomas W. Merrill, *Judicial Opinions as Binding Law and as Explanations for Judgments*, 15 Cardozo L. Rev. 43, 62 (1993) ("[J]udicial opinions are simply explanations for judgments—essays written by judges explaining why they rendered the judgment they did."). It would be legal for the state defendants to continue enforcing their agency-shop laws after *Janus* until a litigant sued them to enjoin the practice. The state defendants chose to conform to their conduct to *Janus* without awaiting a court directive, but no statute or court judgment required them to do this.

The state defendants are therefore wrong to say that *Janus* "has already declared these provisions [of Maryland law] to be unconstitutional." ECF No. 74-1 at 6; *see also id.* at 7 ("*Janus* . . . invalidat[ed] any scheme that permitted agency fees to be taken without the employee's consent."). The ruling and opinion in *Janus* do not impose formal legal obligations on non-parties to that litigation, and the state defendants remain free to enforce section 6-407 of the Maryland Code of Education until a court enjoins them from doing so. *See Jernigan v. Crane*, 796 F.3d 976, 979 (8th Cir. 2015) (refusing to hold that a constitutional challenge to Arkansas's marriage laws had become moot after *Obergefell*, because *Obergefell* had "invalidated laws in Michigan, Kentucky, Ohio, and Tennessee—not Arkansas."). *Janus* did not award any judicial relief to the plaintiffs in this case, nor did it issue the declaratory judgment

---

1.  *See Martin v. Wilks*, 490 U.S. 755 (1989); *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971).

or the injunction that the plaintiffs are seeking against the state defendants. It remains possible for this Court to grant the relief that the plaintiffs seek: a declaratory judgment that section 6-407 violates the Speech Clause and an injunction that prohibits the state defendants from enforcing it. *See Jernigan*, 796 F.3d at 979. *Janus* did not provide any of this relief, and neither the ruling nor the opinion in *Janus* has any self-executing effect on the state defendants.

## II. THE PLAINTIFFS' CLAIMS FOR PROSPECTIVE RELIEF AGAINST THE COLLECTION OF REPRESENTATION FEES ARE NOT MOOT BECAUSE A DEFENDANT'S VOLUNTARY CESSATION OF UNCONSTITUTIONAL CONDUCT IN RESPONSE TO A SUPREME COURT RULING DOES NOT MOOT A CLAIM FOR PROSPECTIVE RELIEF

The state defendants do not deny that they ceased enforcing the State's agency-shop laws after Ms. Akers filed her lawsuit—and they do not deny that their decision to halt the enforcement of those laws was voluntary. But the state defendants nevertheless contend that they can escape the voluntary-cessation doctrine on account of the Supreme Court's intervening decision in *Janus. See* ECF No. 74-1 at 9–12. None of the State's arguments can be reconciled with the numerous court rulings that have held that a State's voluntary cessation of unconstitutional conduct in response to an intervening Supreme Court decision in a case involving other parties does not moot ongoing litigation.

The state defendants make two arguments against voluntary cessation. First, they contend that a voluntary cessation "must be 'at least somewhat related' to the pending litigation,"[2] and they insist that the State stopped enforcing its agency-shop laws on account of *Janus* rather than the plaintiffs' lawsuit. *See* ECF No. 74-1 at 9. Second, the state defendants argue that their voluntary cessation can moot the plaintiffs' claims for prospective relief if it is "absolutely clear that the allegedly wrongful behavior could

---

2.  *See* ECF No. 74-1 at 9 (quoting *Porter v. Clarke*, 852 F.3d 358, 364 n.3 (4th Cir. 2017)).

not reasonably be expected to recur." ECF No. 74-1 at 9 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Neither of these arguments can be squared with the many court rulings that have refused to find mootness when a State complies with an intervening Supreme Court decision.

### A.    Same-Sex Marriage

When the Supreme Court announced its ruling in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), several States were litigating the constitutionality of their marriage laws in the lower federal courts. All of those States promptly complied with *Obergefell* and starting issuing marriage licenses to same-sex couples—but that did not moot the ongoing constitutional challenges to the states' marriage laws. *See, e.g.*, *Jernigan v. Crane*, 796 F.3d 976, 979 (8th Cir. 2015) (refusing to hold that a constitutional challenge to Arkansas's marriage laws had become moot after *Obergefell*, because *Obergefell* had "invalidated laws in Michigan, Kentucky, Ohio, and Tennessee—not Arkansas."); *Rosenbrahn v. Daugaard*, 799 F.3d 918, 922 (8th Cir. 2015) ("South Dakota's assurances of compliance with *Obergefell* do not moot the case."); *Waters v. Ricketts*, 798 F.3d 682, 686 (8th Cir. 2015) ("Nebraska's assurances of compliance with *Obergefell* do not moot the case."); *Waters v. Ricketts*, 159 F. Supp. 3d 992, 999–1000 (D. Neb. 2016) (refusing to find the plaintiffs' constitutional challenge to Nebraska's laws moot because "no Court has yet declared Section 29 unconstitutional. . . . It has not been repealed and is still published as part of the Nebraska Constitution. . . . The *Obergefell* case struck down the marriage exclusions in Michigan, Kentucky, Ohio, and Tennessee. While precedent does in fact dictate the result in the case before this Court, Section 29 has not specifically been declared unconstitutional."); *Strawser v. Strange*, 190 F. Supp. 3d 1078, 1081 (S.D. Ala. 2016) ("[A]

government ordinarily cannot establish mootness just by promising to sin no more." (citation and internal quotation marks omitted)).

Many other post-*Obergefell* rulings directed entry of judgment for the plaintiffs without even discussing the issue of mootness. *See, e.g.*, *De Leon v. Abbott*, 791 F.3d 619, 625 (5th Cir. 2015) (remanding "for entry of judgment in favor of the plaintiffs"); *Campaign for Southern Equality v. Bryant*, 791 F.3d 625, 627 (5th Cir. 2015) (directing the district court to enter judgment for the plaintiffs challenging the constitutionality of Mississippi's marriage laws); *Robicheaux v. Caldwell*, 2015 WL 4090353, at *1–2 (E.D. La. July 2, 2015) (issuing an injunction against the enforcement of Louisiana's marriage laws rather than declaring the case moot). Although these cases do not establish precedential holdings on the mootness issue, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998), the state defendants would still have to show that these courts erred by failing to moot the claims *sua sponte* in response to *Obergefell*.

### B.    Partial-Birth Abortion

The judicial response to *Stenberg v. Carhart*, 530 U.S. 914, 939 (2000), likewise shows that constitutional challenges to state laws do not become moot when the Supreme Court disapproves a similar or identical law in another state. After *Stenberg* declared Nebraska's partial-birth abortion ban unconstitutional, the en banc Seventh Circuit enjoined the enforcement of Illinois's and Wisconsin's partial-birth abortion bans, even though both States had *conceded* that their statutes were unconstitutional and unenforeable in light of *Stenberg. See Hope Clinic v. Ryan*, 249 F.3d 603, 604 (7th Cir. 2001) (en banc) ("[B]oth Illinois and Wisconsin have conceded that their partial-birth-abortion statutes are unconstitutional under the approach the Court adopted in *Stenberg*. We agree with this assessment of *Stenberg*'s significance."). Yet rather than declaring the constitutional challenges moot on account of *Stenberg* and

the States' concessions, the en banc court enjoined the state defendants from enforcing the statutes and directed entry of judgment for the plaintiffs. *See id.* at 606 ("In *Hope Clinic* the judgment is affirmed to the extent it enjoins enforcement of 720 ILCS 513/10, the criminal prohibition of partial-birth abortions. . . . In *Christensen* the judgment of the district court is vacated, and the case is remanded with instructions to enjoin the defendants from enforcing Wis. Stat. § 40.16, Wisconsin's criminal prohibition of partial-birth abortions.").

### C.   Sex-Offender Access To Social-Networking Web Sites

In *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), the Supreme Court disapproved a statute that prohibited registered sex offenders from accessing social networking web sites. *See id.* at 1733–34 (describing North Carolina's statute). Before the Supreme Court announced its decision in *Packingham*, a similar lawsuit had been brought against a nearly identical Kentucky statute. *See Doe v. Kentucky ex rel. Tilley*, 283 F. Supp. 3d 608 (E.D. Ky. 2017). The district court in Kentucky stayed its proceedings to await the Supreme Court's ruling in *Packingham*. *See id.* at 611.

After *Packingham*, the state defendants in *Doe conceded* that Kentucky's statute was unconstitutional and unenforceable given the ruling in *Packingham*:

> Defendant John Tilley, Secretary of the Justice and Public Safety Cabinet, concedes that Kentucky's restriction on sex offender registrants' use of social media websites is unconstitutional in the wake of *Packingham*. Secretary Tilley explains that, while he considers Kentucky's sex offender restrictions to be important tools to protect the children of the Commonwealth from abuse, the North Carolina statute struck down by the Supreme Court was even more narrowly tailored than KRS § 17.546(2).

*Doe*, 283 F. Supp. 3d at 612 (citation omitted). Yet the district court refused to declare that the plaintiff's claims for prospective relief against Secretary Tilley and the State had become moot. Instead, the Court entered a permanent injunction against the state defendants. *See id.* at 616 ("[T]he Court hereby ORDERS that Plaintiff John

Doe's motion for a permanent injunction is GRANTED. The Commonwealth is permanently enjoined from enforcing KRS §§ 17.546 and 17.510(10), (13) in light of the unconstitutional restrictions those statutes place on the First Amendment rights of sex offenders.").[3]

* * *

None of these cases can be reconciled with the state defendants' mootness argument—and each of them shows that the cessation of unconstitutional conduct in response to a Supreme Court decision is incapable of mooting a claim for prospective relief.

And each of these cases refutes the state defendants' efforts to escape the voluntary-cessation doctrine. Consider first the State's argument that its voluntary cessation is entirely unrelated to the pending litigation because it was ostensibly compelled by *Janus. See* ECF No. 74-1 at 9 (citing *Porter*, 852 F.3d at 364 n.3). If that argument were to be accepted, then every post-*Obergefell* case should have declared the ongoing constitutional challenges to state marriage laws moot; the Seventh Circuit's post-*Stenberg* ruling in *Hope Clinic v. Ryan*, 249 F.3d 603, 604 (7th Cir. 2001) (en banc), should have declared the constitutional challenges to Illinois's and Wisconsin's partial-birth abortion laws moot; and the post-*Packingham* district court should have mooted the constitutional challenge to the Kentucky law restricting sex offenders' access to

---

3. The county defendants in *Doe* continued to defend the constitutionality of the Kentucky statute and sought to distinguish it from the law that the Supreme Court had disapproved. *See Doe v. Kentucky ex rel. Tilley*, 283 F. Supp. 3d 608, 612 (E.D. Ky. 2017) ("Defendants Lou Anna Red Corn and Larry Roberts, Fayette County's Commonwealth and County Attorneys, do not share Secretary Tilley's view and attempt to distinguish KRS § 17.546(2) from the unconstitutional North Carolina law."). But that cannot justify the district court's injunction against "the Commonwealth," which is logically incompatible with the state defendants' mootness argument in this case.

social-networking websites. But none of those cases declared the ongoing constitu-tional challenges moot after the Supreme Court had spoken—and that is because the State's voluntary cessation was a response to *both* the Supreme Court's ruling *and* the ongoing litigation that threatens to enjoin any state officer who fails to comply with the Supreme Court's constitutional pronouncement. The better view—and the view consistent with each of the post-*Obergefell*, post-*Stenberg*, and post-*Packingham* cases—is that the state defendants' decision to stop enforcing Maryland's agency-shop laws is related to both *Janus* and the plaintiffs' lawsuit, especially when *Janus* itself imposes no formal legal obligation on the state or union defendants in this case.

The state defendants' insistence that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" is likewise incompatible with the post-*Obergefell*, post-*Stenberg*, and post-*Packingham* rulings that refused to moot constitutional challenges to state laws after the Supreme Court had declared another state's identical laws unconstitutional. The state defendants in each of those cases had *conceded* that their challenged laws were unconstitutional in light of the intervening Supreme Court ruling—just as the state defendants in this case have done. But that was not enough to moot the constitutional challenges that had been brought before the Supreme Court ruled. None of the state defendants in this case are subject to a judicial order that stops them from enforcing the challenged provisions of section 6-407, and there is nothing to stop the state defendants from resurrecting the enforcement of these statutes if the composition of the federal judiciary changes or if Congress enacts legislation to deprive the Supreme Court of jurisdiction over *Janus*-related claims. *See* U.S. Const. Article III, § 2, ¶ 2. The state defendants do not claim that their non-enforcement policy is irreversible, and they do not deny that a future regime remains capable of restoring the pre-*Janus* payroll deductions given that the statutes have not been amended or repealed.

### D.   None of the Cases That The State Defendants Cite Supports Their Mootness Argument

The union defendants cite several appellate-court decisions to support their mootness argument, but each of them is readily distinguishable. In *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485 (7th Cir. 2004), the very statute that the plaintiffs were challenging had already been declared unconstitutional before it took effect, and it had never been enforced at any time by the state defendants in that case. *See id.* at 492 ("The statute was declared to be unconstitutional before it went into effect, and it has never been enforced. The Board's assertions that it will not now enforce the statute are extremely credible *given that it has never enforced the statute in the past.*" (emphasis added)). The Court accepted the State's promise of future non-enforcement because the State had *never* enforced the statute against *anyone* before the plaintiffs sued—a detail that the State conveniently omits in its description in the case, and which distinguishes *Wisconsin Right to Life* not only from this case but from all of the post-*Obergefell*, post-*Stenberg*, and post-*Packingham* cases that refused to find mootness after the state defendants had promised to comply with an intervening Supreme Court ruling.

*Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225 (4th Cir. 1989), is more analogous to the situation in this case, but even in *Telco Communications* the Court was careful to state that it would be improper to enjoin "state officials who have *never violated the law* or shown any intention to violate the law." *Id.* at 1231 (quoting *Bloodgood v. Garraghty,* 783 F.2d 470, 476 (4th Cir. 1986) (emphasis added)). Here, the state defendants *have* violated the Constitution by enforcing agency-shop laws prior to *Janus*, and although they have promised not to enforce these laws post-*Janus*, such promises were insufficient to moot ongoing constitutional challenges in the post-*Obergefell*, post-*Stenberg*, and post-*Packingham* litigation. If this Court interprets

*Telco Communications* to moot constitutional challenges whenever the state defendants concede the law to be unconstitutional in the wake of an intervening Supreme Court ruling, then it will create a division of authority with the courts that rejected similar mootness arguments after *Obergefell*, *Stenberg*, and *Packingham*. The sounder approach is to construe *Telco Communications* narrowly and limit its holding to situations in which the state defendants have *never* violated the plaintiffs' constitutional rights.

Then there is *Christian Coalition v. Cole*, 355 F.3d 1288 (11th Cir. 2004), where a state Judicial Inquiry Commission issued an advisory opinion warning elected judges not to answer parts of a questionnaire distributed by the Christian Coalition of Alabama. The Christian Coalition sued to challenge the constitutionality of this advisory opinion, and while the litigation was unfolding the Supreme Court announced its ruling in *Republican Party of Minnesota v. White,* 536 U.S. 765 (2002), which held that the First Amendment gives elected judges the right to announce their views on disputed issues. In response to *White*, the Judicial Inquiry Commission withdrew its advisory opinion *and* the Alabama Supreme Court announced that it would revise the judicial canons on which the advisory opinion had been based. *See Christian Coalition*, 355 F.3d at 1290. The Eleventh Circuit declared the case moot, announcing that:

> The Supreme Court's decision in *White and the Alabama Supreme Court's Committee on the Canons' decision to reevaluate the Canons in light of White* changed the legal landscape on which the JIC initially based its Advisory Opinion. Thus, the CCA has every reason to believe that the JIC's representation is genuine, and can reasonably expect that the JIC will not issue another opinion preventing judges from answering the questionnaire at issue in this case.

*Christian Coalition*, 355 F.3d at 1292–93 (emphasis added).

Christian Coalition might support the state defendants' mootness argument if it had held that the intervening Supreme Court ruling in *White*, standing alone, was

sufficient to "change[] the legal landscape" and produce a finding of mootness. *See* Dkt. No. 74-1 at 11. But that is not what the Eleventh Circuit held. It was the Supreme Court's ruling in *White*—*combined with* the Alabama Supreme Court's decision to revise the judicial canons that undergirded the advisory opinion—that led the Eleventh Circuit to conclude that the Judicial Inquiry Commission's withdrawal of its opinion was not "voluntary" cessation, and was instead the "result of subsequent events out of the JIC's control." *Id*. at 1292. The state defendants, by contrast, are attempting to stave off voluntary cessation by relying *solely* on the intervening Supreme Court ruling in *Janus*, and neither *Christian Coalition*—nor any other appellate case of which we are aware—allows the mere compliance with an intervening Supreme Court ruling to moot a case. Indeed, the post-*Obergefell*, post-*Stenberg*, and post-*Packingham* cases disapprove that as a basis for mootness.

## III.   THE PLAINTIFFS HAVE STATED A CLAIM AGAINST THE ENFORCEMENT OF HOUSE BILL 811

Ms. Akers's constitutional argument rests on the following syllogism: (1) HB 811's compelled-disclosure provisions are subject to "exacting scrutiny"; (2) The compelled disclosure of an employee's home address, home phone number, and personal cell-phone number cannot survive "exacting scrutiny" because a union does not need this information to communicate with the employees that it represents; (3) Therefore, HB 811's compelled-disclosure requirements are unconstitutional as applied to employees who have not consented to the disclosure of their personal contact information. The state defendants contest the major premise and the minor premise of this argument.

A. **HB 811's Compelled-Disclosure Requirements Are Subject To "Exacting Scrutiny"**

The state defendants claim that "exacting scrutiny" cannot apply unless the compelled disclosures "would be clearly linked with a particular position, idea, or candidate." ECF No. 74-1 at 18. But the Supreme Court has never held that its "exacting scrutiny" standard is limited to compelled disclosures that directly reveal an individual's political associations or beliefs—and the state defendants do not cite any case that refused to apply "exacting scrutiny" because the challenged disclosure failed to reveal information of this sort. Instead, the state defendants rely only on the brute fact that the cases that applied "exacting scrutiny" happened to involve disclosures of an individual's political associations or beliefs, and they use that to infer that the "exacting scrutiny" standard must therefore be limited to compelled disclosures of that particular type.

That is a non-sequitur. To determine whether "exacting scrutiny" applies, one looks not to the facts of individual cases but to the Supreme Court's *rationale* for subjecting compelled disclosures to First Amendment scrutiny. And the Supreme Court has made clear that compelled disclosures trigger heightened review when they have the effect of deterring others from engaging in First Amendment activities. *See NAACP v. Alabama*, 357 U.S. 449, 463 (1958) (refusing to allow the compelled disclosure of the NAACP's membership list because such disclosure "may induce members to withdraw from the Association and dissuade others from joining it"); *id*. (acknowledging "the deterrent effect which . . . these disclosures may well have on the free exercise by petitioner's members of their constitutionally protected right of association"); *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 97 (1982) (refusing to allow the compelled disclosure of the Socialist Workers Party's campaign contributors because "such an individual may well be deterred from providing services by even a small risk of harassment"). A law that compels school employers

to hand over their employees' personal contact information to the union will have the undeniable effect of deterring those employees from engaging in anti-union speech. That does not necessarily make the law unconstitutional, but it does require a court to subject the law to "exacting" First Amendment scrutiny.

> **B.    The Compelled Disclosure Of Anti-Union Employees' Home Addresses, Home Phone Numbers, And Personal Cell-Phone Numbers Cannot Survive "Exacting Scrutiny" Because It Remains Possible To Establish Equally Effective Channels Of Communication Without Forcing Schools To Disclose This Personal Contact Information**

HB 811's compelled disclosures cannot survive exacting scrutiny because there are equally effective ways to establish communication channels between a union and school employees that do not force the disclosure of anti-union employees' personal contact information. And because these equally effective alternatives remain available to the State, the compelled disclosure of anti-union employees' personal contact information cannot survive any formulation of "exacting scrutiny."

The state defendants contend that the compelled-disclosure regime facilitates communication between the union and school employees. *See* ECF No. 74-1 at 13. And the State's defense of HB 811 would easily survive rational-basis scrutiny or other forms of review that do not require a clear fit between ends and means. *See, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2420–21 (2018) (laws will survive rational-basis review so long as it remains possible to discern a relationship to legitimate state interests). But the problem with HB 811 is that it remains possible to create equally effective avenues of communication without forcing the disclosure of anti-union employees' home addresses, home phone numbers, and personal cell-phone numbers.

The state defendants note that most school employees work only ten months per year and may not check their work mailboxes, work voicemail, and work e-mail accounts during the summer months. *See* ECF No. 74-1 at 23. But it is not necessary

to force the disclosure of every employee's home addresses, home phone number, and personal cell-phone number to address this problem. Instead, school employees could be given a choice. They could either: (1) allow the school to disclose their personal contact information to the union; or (2) take steps to ensure that their work mail will be forwarded to their home, their work phone calls will be redirected to their personal cell phone, and their work e-mails will be forwarded to an e-mail account that they use during summer months. It is easy and inexpensive to set up forwarding mechanisms of this sort, and school employees should at least be allowed to choose whether to make these arrangements before having their personal contact information disclosed to a union that they oppose.

The union's desire to avoid school-sponsored media when sending confidential communications is likewise insufficient to justify the compelled disclosure of every single employee's home addresses, home phone number, and personal cell-phone number. Anti-union employees who do not want the union to have their personal contact information should have the option of setting up their own communications channel for the union to use if the union wants to avoid school-sponsored media. A school employee who wants to protect her privacy, for example, could ask the union to send mail communications to a post office box or a third-party entity that holds the employee's home address but keeps the address from the union. Unions have used third-party entities of this sort to send mail to employees that they represent, and it obviates the need for unions to hold the home addresses of public-sector employees. *See County of Los Angeles v. Los Angeles County Employee Relations Comm'n*, 301 P.3d 1102, 1006 (Cal. 2013) (noting that the County of Los Angeles has "has never given SEIU home addresses or telephone numbers" of its employees, and that the SEIU has delivered its mail communications "to the Los Angeles County Employee Relations Commission (ERCOM), an independent body that manages relations between the County and its employees," and that ERCOM would mail the materials directly

to the employee). The same is true for phone and e-mail communications: The employee should have the option of establishing a virtual phone number or a separate e-mail account for the union to use—which protects the employee's privacy and allows him to quickly change or terminate the alternative phone number or e-mail address if they are publicly released or fall into the wrong hands.

The most troubling aspect of HB 811's compelled-disclosure regime is that it makes no exceptions or allowances for *anyone*—not even for employees whose lives could be endangered if their personal contact information fell into the wrong hands. Other States have recognized the need to protect victims of stalking or domestic violence when requiring employers to hand over employees' personal contact information to a union. *See, e.g.*, Cal. Gov't Code § 6207 (protecting the privacy of victims of domestic violence, sexual assault, and stalking); Cal. Gov't Code § 6254.3 (a)(3) (protecting the home addresses and phone numbers of employees performing law-enforcement functions). And California allows any public employee to opt out of having his employer disclose his home address, home and personal cell-phone numbers, and personal e-mail address to a union. *See* Cal. Gov't Code § 6254.3(c). Of course, the mere fact that other States have accommodated their employees' privacy concerns does not mean that Maryland is constitutionally compelled to do the same, but it does undercut the union's contention that it must have the personal contact information of every single school employee in order to communicate effectively with the members of a bargaining unit.

### C.  The State's Complaint That The Plaintiffs Have Failed To Produce "Evidence" Or Specific Factual Allegations Is Not A Basis For Dismissal Under Rule 12(b)(6)

The state defendants contend that the plaintiffs must show "a reasonable probability that the compelled disclosure[s] . . . will subject them to threats, harassment, or reprisals from either Government officials or private parties." ECF No. 74-1 at 24.

And they fault the plaintiffs for failing to present evidence of this in their complaint. *See id.* ("[T]he plaintiffs have presented no evidence that such a threat is real."); *id.* ("They do not provide any evidence of such intimidation here in Maryland—as is their burden—or even *allege* that a union has engaged in such tactics."); *id.* at 26 ("[T]he plaintiffs [have] not produced the type of evidence that is necessary to support their claim"). They also complain that the plaintiffs have failed to provided factual details of the threats, harassment, or reprisals that the plaintiffs expect to encounter. *See* ECF No. 74-1 at 25 (faulting the plaintiffs for offering "bald and general allegations"); *id.* (criticizing "[t]he plaintiffs' failure to produce evidence of, or even allege, intimidation or threats against them by their unions sets this case apart from those that have found First Amendment violations . . . .").

But plaintiffs are not required to produce *evidence* to survive a motion to dismiss. A plaintiff's allegations are presumed to be true at this stage of the proceedings, regardless of whether any evidence exists to support them. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 508 n.1 (2002) ("Because we review here a decision granting respondent's motion to dismiss, we must accept as true all of the factual allegations contained in the complaint."). And complaints are not required to plead facts; "bald and general allegations" are perfectly acceptable under a notice-pleading regime. *See Swierkiewicz*, 534 U.S. at 512 ("Federal Rule of Civil Procedure 8(a)(2) . . . provides that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (citation and internal quotation marks omitted)). If the state defendants doubt that there is evidence to support the plaintiffs' First Amendment argument, then they should answer the complaint and move for summary judgment; they cannot dismiss a claim at Rule 12(b)(6) on the ground that it lacks evidentiary support. *See id.* ("This sim-

plified notice pleading standard relies on liberal discovery rules and summary judg-ment motions to define disputed facts and issues and to dispose of unmeritorious claims."). And if the state defendants think the complaint should provide more factual detail, then they should move for a more definite statement under Rule 12(e) rather than moving to dismiss. *See id*. at 514 ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.").

The plaintiffs have done more than enough to survive a motion to dismiss under Rule 12(b)(6). They do not need to prove that HB 811 is unconstitutional at the motion-to-dismiss stage; they need only to *allege* that it is, and the State's defenses of HB 811 turn on factual contentions that cannot be considered at this stage of the litigation. Whether HB 811 actually can survive exacting scrutiny (or any other stand-ard that the Court chooses to apply) is a matter to be resolved on summary judgment after the development of a evidentiary record.

### D.   The Pre-*Janus* Authorities That Uphold The Compelled Disclosure Of Employees' Personal Contact Information Have No Bearing On The Plaintiffs' First Amendment Arguments Against HB 811

The state defendants cite cases that have upheld the force disclosure of employees' home addresses and phone numbers to the union that represents them. *See* ECF No. 74-1 at 27 (citing *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759 (1969) and *NLRB v. J.P. Stevens & Co.*, 409 F.2d 1207 (4th Cir. 1969)). But none of these cases have anything to say about the First Amendment arguments that the plaintiffs make against HB 811.

First, neither *Wyman-Gordon* nor *J.P. Stevens* even considers whether the com-pelled disclosure of personal contact information violates the Constitution by chilling First Amendment activity. See *Wyman-Gordon*, 394 U.S. at 767 (no discussion of any First Amendment issues); *J.P. Stevens*, 409 F.2d 1207 (same). Neither a court nor a

litigant can refute a constitutional argument by citing cases that do not even consider (let alone resolve) the plaintiffs' constitutional objections. *See Waters v. Churchill*, 511 U.S. 661, 678 (1994) (plurality opinion) ("[C]ases cannot be read as foreclosing an argument that they never dealt with.").

Second, both *Wyman-Gordon* and *J.P. Stevens* concern private-sector labor relations, where agency shops remain constitutional even after the Supreme Court's ruling in *Janus*. The forced disclosure of an employee's private information is easier to defend when a State can force anti-union employees to support the union financially. So one cannot put any weight on the fact that these decisions never address the First Amendment arguments that the plaintiffs are raising here—or on the fact that the litigants in those cases did not appear to raise them. No one could have thought that these arguments would get traction in a workplace that tolerates compulsory agency-shop arrangements.

## IV.   THE PLAINTIFFS' CONSTITUTIONAL CHALLENGES TO EXCLUSIVE REPRESENTATION SHOULD BE DISMISSED GIVEN THE SUPREME COURT'S HOLDING IN KNIGHT

The state defendants correctly note that *Knight v. Minnesota Community College Faculty Association*, 460 U.S. 1048 (1983), summarily affirmed a district court's rejection of a constitutional challenge to exclusive representation in public-sector employment. The state defendants are also correct to observe that *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), rejected First Amendment challenges to other features of Minnesota's exclusive-representation regime. *See* ECF No. 75-1 at 36–37. Although there is language in *Janus* that suggests that the Supreme Court might be open to reconsidering the constitutionality of exclusive representation in the public sector,[4] we agree with the defendants that these statements are

---

4.   *See Janus*, 138 S. Ct. at 2460 ("Designating a union as the employees' exclusive representative substantially restricts the rights of individual employees."); *id.* at 2478 ("It is also not disputed that the State may require that a union serve as

insufficient to authorize a federal district court to depart from the Court's previous holdings in *Knight. See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). The plaintiffs brought this First Amendment challenge to seek reconsideration of *Knight*, but they cannot pursue this claim until the case arrives at the Supreme Court.

The Court should therefore dismiss the First Amendment challenge to exclusive representation and allow the plaintiffs to pursue this claim if and when their case reaches the Supreme Court. The Court should be aware that the plaintiffs in *Bierman v. Dayton*, 900 F.3d 570 (8th Cir. 2018), are seeking certiorari on their constitutional challenge to exclusive representation, and if the Supreme Court grants certiorari in *Bierman* the plaintiffs may seek to reopen their constitutional challenge to exclusive representation in the public sector.

---

exclusive bargaining agent for its employees—itself a significant impingement on associational freedoms that would not be tolerated in other contexts.").

## CONCLUSION

The state defendants' motion to dismiss should be granted with respect to the plaintiffs' constitutional challenge to exclusive representation, but denied in all other respects.

Respectfully submitted.

JONATHAN F. MITCHELL*
Mitchell Law PLLC
106 East Sixth StreetSuite 900
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3940 (fax)
jonathan@mitchell.law

* admitted *pro hac vice*

Dated: November 23, 2018

 /s/ Rada A. Machin
RADA A. MACHIN
D. Md. Bar No. 20076
The Machin Law Firm, LLC
One Research Court, Suite 450
Rockville, Maryland 20850
(301) 731-2000 (phone)
(301) 731-2000 (fax)
rada@machinlawfirm.com

*Counsel for Plaintiffs and
the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that on November 23, 2018, I served this document through the Court's CM/ECF system upon:

John West
Leon Dayan
Bruce R. Lerner
Jacob Karabell
Adam Bellotti
Bredhoff & Kaiser PLLC
805 15th Street NW
Washington, D.C. 20005
(202) 842-2600
jwest@bredhoff.com
ldayan@bredhoff.com
blerner@bredhoff.com
jkarabell@bredhoff.com
ldayan@bredhoff.com

Kristy K. Anderson
Maryland State Education Association
140 Main Street
Annapolis, Maryland 21401
(443) 433-3665
kanderson@mseanea.org

Lubna A. Alam
National Education Association
1201 16th Street NW, 8th Floor
Washington, DC 20036
(202) 833-4000
lalam@nea.org

*Counsel for Union Defendants*

Adam Dean Snyder
Office of the Attorney General
Division of Opinions & Advice
200 St. Paul Place
20th Floor
Baltimore, Maryland 21202
(410) 576-6398
asnyder@oag.state.md.us

Ryan Robert Dietrich
Office of the Attorney General
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-7648
rdietrich@oag.state.md.us

*Counsel for State Defendants*

Edmund J. O'Meally
Adam E. Konstas
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
(410) 339-6757
(410) 339-5786
eomeally@pklaw.com
akonstas@pklaw.com

Margaret-Ann Frances Howie
Baltimore County Public Schools
6901 Charles Street
Towson, Maryland 21204
(443) 809-4060
mhowie@bcps.org

*Counsel for Defendant Verletta White*

(additional counsel listed on following page)

B. Darren Burns
Carney, Kelehan, Bresler, Bennett &
Scherr, LLP
1997 Annapolis Exchange Parkway
Suite 300
Annapolis, Maryland 21401
(410) 573-2001
bdb@carneykelehan.com

*Counsel for Defendant George Arlotto*

 /s/ Rada A. Machin
Rada A. Machin
*Counsel for Plaintiffs and Proposed Classes*