IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RUTH AKERS, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-18-1797 |
| MARYLAND STATE EDUCATION ASSOCIATION, et al. | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Ruth Akers ("Ms. Akers") and Sharon Moesel ("Ms. Moesel") (collectively, "Plaintiffs") bring this putative class action against the following Defendants: Maryland State Education Association ("MSEA"), a labor union; Teachers' Association of Baltimore County and Teachers' Association of Anne Arundel County, local union chapters affiliated with MSEA, sued as representatives of the class of all chapters and affiliates of MSEA; National Education Association ("NEA"), a labor union affiliated with MSEA; Verletta White, interim superintendent of the Board of Education of Baltimore County, and George Arlotto, superintendent of Anne Arundel County, sued in their official capacities as representatives of the class of all superintendents of Maryland school districts; Larry Hogan, as Governor of Maryland, in his official capacity; Brian Frosh, Attorney General of Maryland, in his official capacity; and Elizabeth Molina Morgan, Robert I. Chanin, John A. Hayden III, Donald W. Harmon, and Ronald S. Boozer, members of the Maryland Public School Labor Relations Board, in their official capacities. (Am. Compl., ECF No. 59.) Plaintiffs are public school teachers who were not members of the teachers' union but were required to pay

representation fees to the union as a condition of employment.  (*Id.*)  Plaintiffs allege violations of their constitutionally-protected rights and various state-law torts, and they seek injunctive and declaratory relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201.  (*Id.*)

Currently pending before this Court are State-Defendants'[1] Motion to Dismiss Amended Complaint (ECF No. 74) and Motion to Dismiss Amended Complaint of Defendants Maryland State Education Association, Teachers' Association of Baltimore County, Teachers' Association of Anne Arundel County, and National Education Association [(collectively, "the Union Defendants")] (ECF No. 75).  Shortly after the filing of this action, the United States Supreme Court issued its opinion in *Janus v. Am. Fed'n of State, Cty, and Mun. Emps., Council 31*, — U.S. —, 138 S. Ct. 2448 (2018), holding that "[s]tates and public-sector unions may no longer extract agency fees from nonconsenting employees."  138 S. Ct. at 2459.  Plaintiffs' claims for injunctive and declaratory relief are now moot.  Furthermore, consistent with many other courts, this Court holds that collection of fees in good-faith reliance on then-valid law bars the Plaintiffs' refund claims.  Accordingly, for the reasons that follow, both Motions to Dismiss (ECF Nos. 74, 75) are GRANTED.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black &*

---

[1] State-Defendants are identified as Defendants Governor Larry Hogan, Attorney General Brian E. Frosh, and the members of the Maryland Public School Labor Relations Board (Elizabeth Molina Morgan, Robert I. Chanin, John A. Hayden III, Donald W. Harmon, and Ronald S. Boozer).  (Mot. 1, ECF No. 74.)

*Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). This dispute involves the payment of compulsory union dues. Ms. Akers is a public-school teacher who works for the Baltimore County Public Schools, and Ms. Moesel teaches at Annapolis High School in the Anne Arundel County Public Schools. (Am. Compl. ¶¶ 14, 18; ECF No. 59.) Ms. Akers does not approve of the MSEA or its affiliates and refused to become a member, but she was required to pay "representation fees" (also referred to as "agency fees")[2] to the MSEA as a condition of her employment. (*Id.* at ¶ 15-16, 26.) Ms. Moesel was an active member of MSEA and the Teachers Association of Anne Arundel County until she was expelled in May 2017,[3] but the union continued taking representation fees from her pay without her consent. (*Id.* at ¶¶ 19-20.) The MSEA was authorized under Md. Code. Education §§ 6-407(c)-(f) to extract these fees from non-union members as a condition of their employment. (*Id.* at ¶ 23.) Plaintiffs assert that by taking these fees from public-school employees, Defendants committed the torts of conversion, trover, detinue, and trespass to chattels. (*Id.* at ¶ 25.)

Plaintiffs also allege that under the recently-enacted[4] Maryland House Bill 811 ("HB 811"), public-school employers are required to provide the MSEA and its affiliates with the name, home address, home telephone numbers, and personal cell-phone numbers of each newly-hired school employee, regardless of whether the employee consents to the disclosure. (*Id.* at ¶¶ 28-32.) Additionally, Ms. Moesel alleges that public-school teachers should not be forced to accept the union as their exclusive bargaining representative and that forcing a

---

[2] These fees were intended to compensate the union for its efforts on behalf of non-members in the collective-bargaining process since the union represents all public-school employees, not just members. *See* Md. Code Ann., Education §§ 6-407(b)(1), 6-407(c), 6-504(b), 6-509(b).
[3] Ms. Moesel alleges that she was expelled for actively opposing the union's efforts to eliminate her salary bonuses. (Am. Compl. ¶¶ 39-41.)
[4] HB 811 was enacted on July 1, 2018. (Am. Compl. ¶ 31, ECF No. 59.)

3

non-union teacher to accept union-negotiated terms of employment violates anti-trust laws as well as their First Amendment right of freedom of association. (*Id.* at ¶¶ 43-48.)

Ms. Akers initially filed the purported class-action Complaint (ECF No. 1) on June 18, 2018. A Motion for Preliminary Injunction (ECF No. 13) was filed on June 29, 2018, seeking to prevent the enforcement of certain provisions in HB 811 from taking effect on July 1, 2018. Plaintiffs later agreed to withdraw the motion on the basis that HB 811 had already taken effect. (*See* ECF No. 105.) Plaintiffs filed the operative Amended Complaint on September 7, 2018,[5] adding Ms. Moesel as a Plaintiff and adding Verletta White and George Arlotto as Defendants. (ECF No. 59.) Both Verletta White and George Arlotto filed Motions to Dismiss (ECF Nos. 80, 83), to which Plaintiffs did not respond and later agreed could be granted. (ECF No. 105.) The Amended Complaint contains the following requests: (1) a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that the requirement for non-union members to pay representation fees is unconstitutional; (2) all representation fees that have been collected must be refunded under 42 U.S.C. § 1983; (3) a declaration that the compelled disclosure of personal information under HB 811 is unconstitutional; (4) a declaration that the union's exclusive representation in the bargaining process is unconstitutional and a claim against MSEA and its local affiliates that exclusive representation violates federal antitrust law; and (5) State-law tort claims of conversion, trover, detinue, and trespass to chattels, invoking supplemental jurisdiction.

The State-Defendants and the Union Defendants filed motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and

---

[5] Earlier-filed motions to dismiss the original Complaint were subsequently denied as moot. (ECF No. 105.)

failure to state a claim. (ECF Nos. 74, 75.) For the following reasons, Defendants' motions shall be GRANTED. Specifically, Plaintiffs' constitutional challenges to the representation fee provision shall be DISMISSED AS MOOT, and the request for a refund of fees under 42 U.S.C. § 1983 shall be DISMISSED WITH PREJUDICE as barred by Defendants' good-faith defense. Further, the remaining claims shall be DISMISSED WITHOUT PREJUDICE: the challenge to exclusive representation is foreclosed by United States Supreme Court precedent; Plaintiffs have failed to sufficiently plead that their constitutional right of association and freedom of speech have been implicated by the disclosure of their contact information to the union under HB 811; Ms. Moesel fails to allege a plausible antitrust claim; and with the dismissal of the federal claims, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

**STANDARDS OF REVIEW**

I. **Subject Matter Jurisdiction**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D. Md. 2005). Under Article III of the United States Constitution, the judicial power of the United States extends only to "cases" and "controversies." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that

precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiff's particular legal rights.'" *Id.* (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)).

Accordingly, a court's subject matter jurisdiction depends on the existence of an actual case or controversy. *S.C. Coast Conservation League v. U.S. Army Corps. of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction. *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). In a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, however, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. The court, therefore, "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650 (4th Cir. 2018).

6

## II. Failure to State a Claim

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

7

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). Legal conclusions drawn from those facts, however, are not afforded such deference. *Iqbal*, 556 U.S. at 678.

## ANALYSIS

In 1977, the United States Supreme Court issued a decision upholding the constitutionality of representation fees paid to unions. *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977). In *Abood*, the Court concluded that, although compulsory agency fees impinge employees' First Amendment rights to some extent, the mandatory fees were nevertheless justified by the State's compelling interest in "labor peace"; i.e., the logistical and managerial benefits that accrue when an employer negotiates only with one exclusive representative. 431 U.S. at 232-37. This is the very behavior about which the Plaintiffs complain. However, shortly after the filing of this lawsuit, on June 27, 2018, the United States Supreme Court decided *Janus v. Am. Fed'n of State, Cty, and Mun. Emps., Council 31*, — U.S. —, 138 S. Ct. 2448 (2018), which expressly overturned *Abood*, holding that "States and public-sector unions may no longer extract agency fees from nonconsenting employees." 138 S. Ct. at 2459. *Janus* reaffirmed that labor peace is a compelling state interest, but it overruled *Abood's* holding that labor peace justifies requiring non-union members to pay agency fees. *Id.* at 2465-66.

Maryland and other states that had allowed unions to charge representation fees under *Abood's* guidance, recognized that the law of the land had changed and responded

accordingly. Regardless, Plaintiffs seek declaratory and injunctive relief, stating that Defendants' voluntary cessation of unconstitutional actions does not moot their lawsuit. In addition, Plaintiffs also request this Court to order repayment of all representation fees that had been previously collected. Plaintiffs also seek relief related to HB 811's requirement for disclosure of contact information, and Ms. Moesel challenges the principle of exclusive representation by the union. Each of these claims shall be addressed in turn.

I. **Constitutional Claims are Moot**

Plaintiffs' claims for declaratory and injunctive relief are moot. On the same day that *Janus* was decided, the Teachers' Association of Baltimore County and the Teachers' Association of Anne Arundel County contacted the Boards of Education of Baltimore County and Anne Arundel County, respectively, to notify them of the *Janus* decision and to instruct them immediately to cease deducting representation fees from their employees' paychecks. (*See* Galante Decl. ¶ 16, Ex. A, ECF No. 47-1; Jones Decl. ¶ 16, Ex. B, ECF No. 75-6.) The two Boards complied with that instruction. (Galante Decl. ¶ 17; Jones Decl. ¶ 17.) The Teachers' Association of Baltimore County and the Teachers' Association of Anne Arundel County have not subsequently received any representation fees. (*Id.*)

Further, the Maryland State Education Association ("MSEA") sent letters to every representation-fee payer, including Plaintiffs, explaining the *Janus* decision, informing the feepayers that no further representation fees would be deducted from their paychecks, and informing them that MSEA would promptly be refunding to them any fees that might have been pre-paid for the period after June 27, 2018. (Helfman Decl. ¶ 7, Ex. A., ECF No. 47-2.) Refund checks were issued for all such pre-collected fees. (*Id.* at ¶ 9.) Based upon these

actions, combined with the declaration that they will not be resuming the deduction of representation fees from employees' paychecks, the Union Defendants assert that Plaintiffs' request for declaratory and injunctive relief is moot. (Defs.' Mot. Mem. 5, ECF No. 75-1.) The Union Defendants also assert a good-faith defense to liability for refunding fees collected prior to the *Janus* decision. (*Id.* at 11.) The State-Defendants also move to dismiss as moot the injunctive and declaratory relief claims in light of the decision in *Janus*. (Defs.' Mot. Mem. 4, ECF No. 74.)

Plaintiffs argue that their claims for prospective relief are not moot based on the voluntary cessation doctrine. (Pls.' Resp. 1, ECF No. 87.)[6] They also argue that the "good-faith defense" does not warrant dismissal of the refund claims at this stage of the litigation. (*Id.* at 14.)[7]

Since the *Janus* decision, multiple courts have had an opportunity to address similar claims and arguments in their jurisdictions and have uniformly held that plaintiffs' prospective claims were rendered moot under similar circumstances, and the good-faith defense bars refund claims. *See, e.g.*, *Lee v. Ohio Educ. Ass'n.*, — F. Supp. 3d —, 2019 WL 1323622, at *1 (N.D. Ohio Mar. 25, 2019) ("[T]he Court joins an ever-growing number of courts that have found that causes of action seeking to enjoin collection of fair-share fees and recoup damages based on prior collection of those fees must be dismissed in light of

---

[6] The voluntary cessation doctrine refers to situations that do not deprive a federal court of its power to hear and determine a case, even when a defendant has voluntarily ceased the challenged practice, because the allegedly wrongful behavior could reasonably be expected to recur. *See Porter v. Clarke*, 852 F.3d 358, 360 (4th Cir. 2017) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

[7] The good-faith defense refers to a protection from liability under 42 U.S.C. § 1983 by private citizens who have relied in good faith on then-existing laws that were presumptively valid. *See Wyatt v. Cole*, 504 U.S. 158, 168 (1992).

10

*Janus . . . ."*); *Carey v. Inslee*, — F. Supp. 3d —, 2019 WL 1115259, at *1 (W.D. Wash. Mar. 11, 2019)(holding that the requests for prospective injunctive and declaratory relief were moot, and agency fees were collected in good-faith reliance on then-valid law); *Cook v. Brown*, — F. Supp. 3d —, Case No. 6:18-cv-01085-AA, 2019 WL 982384 (D. Or. Feb. 28, 2019) (same); *Mooney v. Illinois Educ. Ass'n*, — F. Supp. 3d —, Case No. 1:18-cv-1439, 2019 WL 1575186, at *2 (C.D. Ill. Apr. 11, 2019) (recognizing the growing consensus concluding that fees collected prior to *Janus* may not be recovered).

The Court of Appeals for the Fourth Circuit has not yet had an opportunity to weigh in, nor have other district courts in this Circuit. However, this Court agrees with the reasoning in these decisions and incorporates it herein. In sum, Plaintiffs' request for injunctive relief is moot because the union's communications are reliable evidence of a permanent shift in policy and the challenged conduct cannot be reasonably expected to recur, and declaratory relief is moot because there is no immediate legal controversy. Further, this Court shall dismiss with prejudice Plaintiffs' claim for a refund of the representation fees that had been paid prior to the *Janus* decision. The collection of those fees was authorized by state statute and pursuant to Supreme Court precedent, and the good-faith defense bars Plaintiffs' claim. *See Williams v. Johnson*, 386 F. Supp. 280, 288-89 (D. Md. 1974).

Accordingly, the declaratory and injunctive claims shall be dismissed as moot. The refund claims shall be dismissed with prejudice because Defendants may assert the good-faith defense, having complied with and relied upon presumptively-valid state law and controlling Supreme Court precedent.

## II. HB 811 Claim

Defendants also move to dismiss Plaintiffs' claim that the disclosure of their contact information to the union without their consent violates their First Amendment rights. (Defs.' Mot. Mem. 24, ECF No. 75-1; Defs.' Mot. Mem. 13, ECF No. 74-1.) Defendants assert that the disclosure of Plaintiffs' contact information by their employer to the union that is statutorily obligated to represent them does not implicate Plaintiffs' First Amendment rights. (Defs.' Mot. Mem. 14, ECF No. 74-1.) Defendants add that no expressive speech is involved in the disclosure, and Plaintiffs' associational choices are not implicated. (*Id.* at 19-20.)

HB 811 requires public school employers to provide their employees' contact information to the unions that represent them. (*See* HB 811, ECF No. 59-3.) This requirement does not reveal any expressive activity on the part of either the employer or the employees whose contact information is provided to the union. Unlike the disclosure in *NAACP v. State of Alabama*, cited by Plaintiffs, the disclosure at issue here does not reveal an affiliation with a union to the State's Attorney General. 357 U.S. 449, 463 (1958). Nor is the disclosure at issue like that in *Brown v. Socialist Workers '74 Campaign Committee*, cited by Plaintiffs, in which contributors to a minor political party were required to be disclosed for public inspection, thus subjecting them to the reasonable probability of threats, harassment or reprisals. 459 U.S. 87, 101-102 (1982). Further the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit have upheld the provision of personal contact information to union representatives in related contexts. *See NLRB v. Wyman-Gordon*

*Co.*, 394 U.S. 759, 767 (1969); *NLRB v. J. P. Stevens & Co.*, 409 F.2d 1207, 1209 (4th Cir. 1969).

The disclosure of all employees contact information to the union does not implicate an association with the union, it does not reveal any affiliation, nor does it prevent employees' anonymous speech or the employees' right to decline joining the union. Indeed, Plaintiffs' allegations are clear that "all" employees contact information is provided, regardless of union membership or political views. (Am. Compl. ¶¶ 29-33, ECF No. 59.) Plaintiffs do not argue that the union should be prevented from contacting them, but rather they assert their desire to protect their privacy by potentially redirecting work email or by setting up virtual contact information. (Pls.' Resp. 15-16, ECF No. 89.) Accordingly, the Plaintiffs have failed to sufficiently plead that their constitutional right of association and freedom of speech have been implicated by the disclosure of their contact information to the union. Therefore, this claim shall be dismissed without prejudice.

### III. Exclusive Representation

Plaintiff, Ms. Moesel, also challenges the principle of exclusive representations, asserting that she has a constitutional right to reject union representation and to negotiate her own salary and other terms of employment. (Am. Compl. ¶¶ 44-45, ECF No. 59.) However, Plaintiffs have agreed with Defendants that this claim is foreclosed by Supreme Court precedent in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984). (Pls.' Resp. 19-20, ECF No. 89.) Plaintiffs agree that this claim should be dismissed without prejudice to them seeking to reopen the challenge if the Supreme Court grants certiorari in

*Bierman v. Dayton*, 900 F.3d 570 (8th Cir. 2018).[8]  (*Id.* at 20-21.)  Accordingly, this Court shall dismiss this claim without prejudice.

Plaintiff Ms. Moesel, however, continues to argue that she has an antitrust claim against the Union Defendants.  (Pls.' Resp. 40, ECF No. 87.)  Ms. Moesel alleges that the unions have violated federal antitrust laws by negotiating and entering into collective bargaining agreements.  (Am. Compl. ¶¶ 46-47, ECF No. 59.)  Although not stated, presumably this claim is based on Section 1 of the Sherman Act, 15 U.S.C. § 1.

To plausibly allege an antitrust claim, a plaintiff "must first plead an agreement to restrain trade."  *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 424 (4th Cir. 2015) (citing *Twombly*, 550 U.S. at 556); *see also Dickson v. Microsoft Corp.*, 309 F.3d 193, 202 (4th Cir. 2002) (stating that a plaintiff must plausibly allege "(1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade.").  Importantly, the complaint must contain sufficient factual allegations regarding each defendant; "[a] plaintiff in a § 1 case cannot assemble some collection of defendants and then make vague, nonspecific allegations against all of them as a group."  *SD3*, 801 F.3d at 422.  Ms. Moesel makes only a conclusory assertion that "[c]ollective-bargaining agreements that command uniform salaries for teachers regardless of subject matter are anti-competitive," and that "compelling entry-level teachers to accept exceedingly low salaries negotiated by a bargaining unit that they do not belong to—and by forbidding entry-level teachers to negotiate better deals with the school district" is a "pernicious and anti-competitive feature of collective

---

[8]      Following *Knight*, every Circuit court to address the constitutionality of exclusive bargaining arrangements has concluded that these provisions do not violate the First Amendment.  *Mentele v. Inslee*, 916 F.3d 783, 787 (9th Cir. 2019) (citing cases).  *Bierman*, an Eight Circuit case, awaits a decision on the petition for certiorari filed in December 2018.

14

bargaining." (Am. Compl. ¶¶ 46-47, ECF No. 59.) She adds that "[t]here is no basis in any federal labor statute for exempting public-employee unions from the antitrust laws." (*Id.* at ¶ 48.)

Plaintiff does not address her failure to plead the requisite elements of an antitrust claim, and simply argues that the Union Defendants' affirmative defenses are not relevant to defeat a motion to dismiss. However, an affirmative defense can be considered by this Court on a motion to dismiss "if the face of the complaint includes all necessary facts for the defense to prevail." *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850-51 (4th Cir. 2016) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). Defendants assert the state-action exception,[9] the *Noerr-Pennington*[10] exception, and the statutory labor exception set forth in Section 6 of the Clayton Act, 15 U.S.C. § 17. This Court does not find it necessary to analyze these defenses at this time because Plaintiff has failed to plead a plausible antitrust cause of action. Therefore, Ms. Moesel's antitrust claim shall be dismissed without prejudice.

## IV. State Law Claims

Plaintiffs are also suing the Maryland State Education Association and its local affiliates "under the state-law torts of conversion, trover, detinue, trespass to chattels, and any other state-law cause of action that offers relief for this unlawful seizure of [their]

---

[9] Federal antitrust law does not impose a burden on the States' power to subordinate market competition to other values deemed fundamental by the State. *See N.C. State Bd. of Dental Exam'rs v. FTC*, 135 S. Ct. 1101, 1109 (2015); *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40 (1985); *Parker v. Brown*, 317 U.S. 341 (1943).

[10] Referring to the Supreme Court's decisions in *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965), establishing that because the First Amendment guarantees the right to petition government for a redress of grievances, the Sherman Act does not extend to "a concerted effort to influence public officials regardless of intent or purpose."

personal property." (Compl. ¶ 51, ECF No. 59.) Plaintiffs invoke the supplemental jurisdiction of this Court over these pendent state-law claims pursuant to 28 U.S.C. § 1367. However, pursuant to 28 U.S.C. § 1367(c)(3), this Court has the discretion to decline to exercise supplemental jurisdiction if the court "has dismissed all claims over which it has original jurisdiction . . . ."

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), the Supreme Court cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a superfooted reading of applicable law." The *Gibbs* Court went on to say that "if the federal law claims are dismissed before trial . . . the state claims should be dismissed as well." *Id.* With no federal claims remaining in this case, this Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over the state-law claims.

Therefore, Plaintiffs' state-law claims shall be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons:

1. State-Defendants' Motion to Dismiss Amended Complaint (ECF No. 74) is GRANTED.

2. Motion to Dismiss Amended Complaint of Defendants Maryland State Education Association, Teachers' Association of Baltimore County, Teachers' Association of Anne Arundel County, and National Education Association (ECF No. 75) is GRANTED.

3. Plaintiffs' declaratory and injunctive claims are DISMISSED AS MOOT.

4. Plaintiffs' claim for a refund of fees under 42 U.S.C. § 1983 is DISMISSED WITH PREJUDICE.

5. All remaining claims in Plaintiffs' Amended Complaint (ECF No. 59) are DISMISSED WITHOUT PREJUDICE.

6. A separate order follows.

Dated: April 18, 2019.

                                                                          \_\_\_\_/s/_____
                                                                          Richard D. Bennett
                                                                          United States District Judge